PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4076

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

YAKOTUS ODUM,

        Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:19-cr-00152-MOC-DSC-1)

Argued: March 7, 2023                                                                        Decided: April 26, 2023

Before RICHARDSON and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Motz wrote the opinion, in which Judge Richardson and Judge Rushing joined.

**ARGUED:** Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Senior Circuit Judge:

Yakotus Odum appeals his conviction and sentence for crimes related to an armed robbery of a Circle K convenience store. He argues that the district court erred in instructing the jury on the elements of aiding and abetting liability, abused its discretion in seating a juror who expressed difficulty hearing during jury selection, and responded inadequately to his objections to several conditions of supervised release. Finding no reversible error, we affirm.

I.

At around 4:00 a.m. on March 31, 2018, a masked man entered a Circle K in Gastonia, North Carolina, pointed his gun at the cashier, and demanded he "[g]ive [him] all the money." A similar robbery took place at a Kingsway convenience store in the same city two weeks later. A grand jury indicted Odum on five charges related to those robberies: two counts of Hobbs Act robbery, two counts of possessing and brandishing a firearm in furtherance of those robberies, and one count of possessing a firearm as a felon. Odum proceeded to trial, which took place over three days in September 2020.

A.

On the first day of jury selection, the district court questioned the first 16 prospective jurors individually. While the court questioned the prospective juror who ultimately became Juror Eight, both Juror Eight and the court expressed some difficulty hearing. About halfway through their conversation, the following exchange took place:

    The Court:    And does your wife work outside the home?
    Juror Eight:   Yes.
    The Court:    Pardon? Did you say yes or no?

>   Juror Eight:   I can't hear you.
>   The Court:   Does your wife — I didn't hear, does she work outside the home?
>   Juror Eight:   Yes.
>   The Court:   What does she do?
>   Juror Eight:   She is in IT at UNCC.
>   The Court:   And how long has she been with those folks?
>   Juror Eight:   So I do have a hearing issue. I can't always understand what you're saying.
>   The Court:   You can't understand. Okay.
>   Juror Eight:   I mean, I get bits and pieces.

The court acknowledged Juror Eight's comment but continued to question him. Juror Eight asked the court to repeat one more question, but otherwise answered the court's questions without issue.

The district court then permitted defense counsel to question the potential jurors. While Odum's counsel asked specific follow up questions of several potential jurors, he did not ask Juror Eight about his hearing or, indeed, question him at all. Later in jury selection, Odum moved to strike Juror Eight for cause. The court refused, saying, "I think [Juror Eight] was able to hear once I spoke into the microphone." No one raised concerns about Juror Eight's ability to hear at any other point in the proceedings.

B.

At trial, Odum did not dispute that the robberies occurred: security cameras recorded both incidents. He argued only that he was not the robber.

The Government presented circumstantial evidence tying Odum to the robberies. The Circle K cashier testified that after taking about $200, which the cashier had been counting to put in the store's safe, the robber fled in the direction of a nearby Arby's. Minutes later, a K-9 unit tracked the robber's scent to the Arby's parking lot, where police

3

found a black ski mask. The DNA on the ski mask belonged to Odum. In fact, the match was so strong that unless Odum had a twin, the DNA could not belong to anyone else. Surveillance footage from a nearby storage facility also showed a car resembling Odum's gold Buick entering and leaving the area around the time of the robbery.

After the second robbery, a K9 unit tracked the robber's scent to an abandoned home. Police found a handgun and a jacket with a Kleenex in one pocket. Swabs from the gun, jacket, and Kleenex all contained mixtures of two or more people's DNA. The Government's expert testified that Odum's DNA was a major contributor to the sample taken from the black jacket and significantly more likely than a random unrelated person to have contributed to the other two items.

The Government then called Jalen Davidson, a federal prisoner who spent time with Odum both inside and outside prison. While the two were together in Gastonia, Davidson heard Odum quiz a mutual acquaintance about the money management and security practices at the gas station where she worked as a cashier. Odum asked "How do you all deposit the money?" "How much is in the cash register at that time?" and "When do you all put it in the bank?" On another occasion, Davidson testified that he overheard Odum at a cookout speaking about "hitting licks for a . . . little nothing change." According to Davidson, "hitting licks" meant "committing a robbery." Davidson also testified that while he and Odum were in the Gaston County jail, they had a conversation about the robberies during which Odum told him he had "messed up" and "got caught."

After the Government rested, defense counsel introduced a photo of Odum's tattooed hands, which he invited the jury to contrast with the hands of the gunman in the

4

Circle K surveillance footage. Additionally, Odum's uncle testified that Odum allowed his 14-year-old cousin to use his car. Defense counsel suggested this cousin may have borrowed Odum's car to commit the robberies. And he addressed the DNA evidence against Odum by arguing that "where it matters the most, somebody else's DNA would [also] be there."

C.

During the charge conference, Odum objected to the court giving an aiding and abetting instruction to the jury, arguing that the evidence did not support it. While the Government argued Odum committed the robberies himself, it also maintained that there was sufficient evidence for the jury to convict him as an aider and abettor. The district court overruled Odum's objection, saying it would "read directly from" 18 U.S.C. § 2, the federal aiding and abetting statute.

The court charged the jury that it could convict Odum of robbery if, among other things, it found that Odum, "or someone aided and abetted by him, committed or attempted to commit robbery." The court then explained:

> Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.
>
> Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, that person is punishable as a principal.

Odum did not object to the contents of the instruction.

The district court did not give an aiding and abetting instruction for any of the other charged crimes. It did tell the jury, however, that possession can be actual

5

or constructive, and that a person has constructive possession over a thing if he "knowingly has both the power and the intention at a given time to exercise dominion or control over [it], either directly or through another person."

D.

The jury returned a mixed verdict. It found Odum guilty of robbing the Circle K and possessing a firearm in furtherance of that robbery but acquitted him of brandishing that weapon. The jury could not reach a verdict on the Kingsway robbery but acquitted Odum of the possessing and brandishing charges related to that robbery. Finally, it convicted Odum of possessing a firearm as a felon.

The district court sentenced Odum to 111 months' imprisonment followed by 5 years of supervised release. The court then heard Odum's objections to several of the Western District of North Carolina's standard conditions of supervised release, overruling most of them.

Odum timely appealed.

II.

Odum first argues the district court erred in failing to properly instruct the jury on aiding and abetting. Odum concedes that because he did not object to the substance of the court's aiding and abetting instruction at trial, we review only for plain error. *See* Fed. R. Crim. P. 30(d), 52(b). To prevail under the plain error standard, Odum must show that the district court erred, that the error was plain, and that the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if Odum makes that showing, we will correct the error only if it "seriously affects the fairness, integrity or public reputation

6

of judicial proceedings." *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009) (quoting *Olano*, 507 U.S. at 732).

A.

We begin by considering whether the district court committed error, and if so, whether that error was plain.

A district court has significant discretion in crafting jury instructions. *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). It acts within its discretion so long as its instructions "fairly state the controlling law." *United States v. Alvarado*, 816 F.3d 242, 248 (4th Cir. 2016) (quoting *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990)) (alteration omitted). The key question is whether, when viewed holistically and in context, the instructions "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Noel*, 641 F.3d at 586 (quoting *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996)).

To convict a defendant under an aiding and abetting theory of liability, the jury must find that the defendant (1) took an affirmative act in furtherance of the underlying offense and (2) did so "with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014); *see also United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). In *Rosemond*, the Supreme Court held that a district court erred because its jury instructions failed to convey that to be held liable for aiding and abetting an offense, the defendant must have "chosen, with full knowledge, to participate in the illegal scheme." *Id.* at 79, 81–82. The district court in this case committed a similar error by omitting any discussion of the intent requirement. Because its instructions on the

7

robbery counts left open the possibility that a mere act in furtherance of the robbery, without the *intent* to further it, might be sufficient to convict Odum, those instructions did not "fairly state[] the controlling law."[1] *See Alvarado*, 816 F.3d at 250.

An error is plain if "the settled law of the Supreme Court or this circuit establishes that an error has occurred." *United States v. Comer*, 5 F.4th 535, 549 (4th Cir. 2021) (quoting *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013)). As early as 1893, the Supreme Court held that a trial court errs when it fails to instruct the jury "that the acts or words of encouragement and abetting must have been used by the accused with the intention of encouraging and abetting." *Hicks v. United States*, 150 U.S. 442, 449 (1893). Given *Hicks* and *Rosemond*, the district court plainly erred when it failed to instruct the jury as to the necessity of intent in proving aiding and abetting.

B.

We ask next whether the error affected Odum's substantial rights.

In general, a defendant alleging error at trial satisfies this standard if he demonstrates "a reasonable probability that, but for the claimed error, the outcome of the proceeding would have been different." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018)). Though the standard is demanding, it does not require the defendant to prove by a preponderance of

---

[1] Odum also argues the district court's instructions failed to convey that aiding and abetting liability requires an affirmative act. But as Odum himself put it, "[t]he everyday meaning of aiding and abetting is providing assistance." Br. of Appellant. at 35. Even if more were necessary, Odum did not preserve this objection by making it at trial and has not explained how this alleged error prejudiced him.

8

the evidence that absent the error, he would not have been convicted. *See United States v. Lockhart*, 947 F.3d 187, 192 (4th Cir. 2020) (en banc) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)). Instead, it is enough that, in the judgment of the reviewing court, "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 192–93 (quoting *Dominguez Benitez*, 542 U.S. at 83).

The same principles of plain error analysis apply in the "context of a jury instructed on multiple theories of guilt, one of which is improper." *United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021) (quoting *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (per curiam)). But to meet this standard, a defendant challenging an erroneous instruction on one theory of guilt must show the improper instruction "resulted in his conviction." *Id.* (quoting *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010)).[2]

Odum has not shown a reasonable probability that the outcome of his trial would have been different had the jury been instructed on the intent requirement of aiding and

---

[2] Applying this rule in *United States v. Moody*, 2 F.4th 180 (4th Cir. 2021), we held that a defendant who challenged the district court's aiding and abetting instruction could not prove the alleged error affected his substantial rights because "there was sufficient evidence for the jury to have convicted [him] . . . as a principal" and "the verdict form ask[ed] only whether [defendant] was guilty or innocent, not which theory the jury relied upon." *Id.* at 199. The Government argues that *Moody* dooms Odum's challenge to the district court's aiding and abetting instruction. Odum, for his part, maintains that *Moody* holds only that a defendant cannot satisfy the third prong of plain error review merely by "demonstrating uncertainty about whether the jury relied on the proper instruction." Reply Br. of Appellant at 9. Any broader reading, he contends, would be inconsistent with the general principle that a defendant need only show a "reasonable probability" of a different outcome to demonstrate an error affected his substantial rights. *Id.* at 11–12. Because the result in this case would be the same either way, we need not resolve this dispute.

9

abetting liability. The circumstantial evidence of Odum's intent was powerful: Police found a ski mask with Odum's DNA — and only Odum's DNA — along the robber's escape route minutes after the robbery occurred. Combined with the footage of Odum's car entering and exiting the area immediately before and after the robbery, the ski mask is "strong proof" that Odum came there with the intent to facilitate the robbery, either as its principal or as an accomplice.[3] *See Ali*, 991 F.3d at 576.

Crucially, the jury also convicted Odum of possessing a firearm in furtherance of the Circle K robbery. The district court gave no aiding and abetting instruction on the possession charge, and it told the jury that to constructively possess a firearm, a defendant must knowingly have "both the power and the intention at a given time to exercise dominion or control over [it]." The only evidence linking a firearm to the Circle K robbery was the evidence a gun was used during the robbery itself. And the only evidence connecting Odum to that gun was the evidence he participated in the Circle K robbery. Thus, assuming (as Odum asks us to) that the jury concluded Odum did not commit the robbery himself and therefore did not actually possess the gun, the jury must have found Odum had "the power and the intention" to exercise control over the gun while someone else committed the robbery on his behalf. That finding prevents him from demonstrating

---

[3] For the same reason, we also reject Odum's contention that the district court abused its discretion in giving an aiding and abetting instruction at all. "A requested instruction may be given if there is a foundation in evidence to support it." *United States v. Schnabel*, 939 F.2d 197, 203–04 (4th Cir. 1991). Here, there was more than enough evidence to conclude Odum aided and abetted the Circle K robbery. If the jury credited Odum's argument that he was not the gunman in the Circle K security footage, the obvious explanation for the remaining evidence was that Odum supplied his car and traveled with the gunman to the Circle K with the intention of facilitating the robbery.

10

prejudice. *See United States v. Hastings*, 134 F.3d 235, 244 (4th Cir. 1998) (concluding that the defendant could not establish prejudice from an erroneous instruction given the facts necessarily found by the jury).

### III.

Odum next argues the district court abused its discretion by denying his for-cause challenge to Juror Eight, who complained of having trouble hearing during jury selection.

District courts enjoy "very broad discretion in deciding whether to excuse a juror for cause." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 222 (4th Cir. 1989). We will uphold their decisions absent "manifest abuse of that discretion." *Id.* In deciding whether to excuse a juror for cause, the ultimate question is whether the juror "could be fair and impartial and decide the case on the facts and law presented." *United States v. Hager*, 721 F.3d 167, 190 (4th Cir. 2013) (quoting *United States v. Capers*, 61 F.3d 1100, 1105 (4th Cir. 1995)). Though most of our cases in this area deal with allegations of juror bias, "[p]hysical or mental incapacity to serve, no less than the existence of bias, strikes at the very fitness of a venireman to sit as a juror."[4] *United States v. Rucker*, 557 F.2d 1046, 1047–48 (4th Cir. 1977); *see also* 28 U.S.C. § 1865(b)(4).

Odum bears the burden of proving bias or incapacity. *See United States v. Turner*, 389 F.3d 111, 117–18 (4th Cir. 2004). Odum does not argue that the record demonstrates Juror Eight was incapable of serving on the jury. Rather, he argues that district court made

---

[4] Of course, given appropriate accommodations, even people with significant hearing loss can successfully serve on juries. *See, e.g.*, *United States v. Dempsey*, 830 F.2d 1084, 1088 (10th Cir. 1987).

11

two legal errors in denying his for-cause challenge. First, he claims that the court "gave no indication that it considered a hearing issue potentially disqualifying." Br. of Appellant at 48. Second, relying on *United States v. Thompson*, 744 F.2d 1065 (4th Cir. 1984), he asserts that after Juror Eight expressed difficulty hearing, the district court was required to "confirm that the hearing issue would not substantially impair his ability to sit on the jury." Br. of Appellant at 50.

Odum's first argument goes nowhere. The district court denied Odum's challenge because it believed Juror Eight *could* hear, not because it thought that a juror's capacity to hear was irrelevant. Odum seizes on the court's use of the phrase "I think" in "I think [Juror Eight] was able to hear" to argue that district court's finding was "ambiguous." Reply Br. of Appellant at 19. We disagree. In context, it is clear the district court believed Juror Eight's difficulty hearing was a temporary problem specific to the court's questioning during jury selection. Even if the district court had not been clear, ambiguity alone cannot demonstrate a "manifest" abuse of discretion.

At this remove, it is difficult to second guess the district court's assessment of Juror Eight's hearing issues. Unlike us, "the district court was on the scene." *Hager*, 721 F.3d at 193. Many details that would have been apparent to the district court — the configuration of the courtroom, the ambient level of noise, and the volume at which the court was speaking before and after Juror Eight expressed difficulty hearing — are lost to us. And nothing in the record before us calls into question the district court's finding. Neither Juror Eight, nor defense counsel, nor anyone else raised concerns about Juror Eight's hearing after jury selection.

12

Odum's second argument fares no better. It is true that a district court must "allow[] sufficient information to come forward so that [it can] exercise [its] discretion in an informed way." *Turner*, 389 F.3d at 118. But this duty does not require the court itself to explore every potential source of bias and incapacity. Instead, a court can satisfy its obligation by permitting counsel to conduct the relevant inquiries. *See id.* at 118–119; *Neal v. United States*, 22 F.2d 52, 53 (4th Cir. 1927); Fed. R. Crim. P. 24(a).

In this case, the district court gave Odum's counsel an opportunity to question the prospective jurors after Juror Eight expressed difficulty hearing. Odum's counsel did not ask Juror Eight any questions about the extent or nature of his hearing issues — indeed, he did not ask Juror Eight any questions at all. Nor did defense counsel seek permission to inquire further after the district court indicated it would not strike Juror Eight for cause.

Our holding in *Thompson*, on which Odum relies, does not suggest a different outcome. There, a juror repeatedly told the district court "I am just not sure I could be totally fair" after prosecutors introduced a disturbing picture of a dead child. *Thompson*, 744 F.2d at 1067. The court denied the defendants' motion for a mistrial because it was "not willing to let a juror halfway through a trial tell me, 'I can't be impartial anymore.'" *Id.* We concluded that the court abused its discretion, explaining that it "should have asked for an affirmative response" before proceeding with the trial. *Id* at 1068. The problem in *Thompson* was that the district court had no basis for concluding the juror could be fair — in fact, the court itself "acknowledged [the juror] had been convinced prematurely" — but still refused to inquire further or remove the juror. *Id.* at 1068–69. In contrast, the district

13

court here found that Juror Eight could hear *and* permitted further inquiry. Odum simply chose not to pursue the matter.

IV.

Finally, Odum argues that the district court erred by imposing several conditions of supervised release without addressing his objections to those conditions.

We review the imposition of discretionary conditions of supervised release for abuse of discretion. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009). As with every part of a defendant's sentence, a district court has a duty to explain the conditions it imposes. *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020). When a defendant makes non-frivolous arguments for a different sentence, the sentencing court must "explain why it has rejected them." *United States v. Boyd*, 5 F.4th 550, 557 (4th Cir. 2021) (quoting *United States v. Lozano*, 962 F.3d 773, 782 (4th Cir. 2020)).

The degree of explanation required depends on the circumstances of each case. *Id.* A sentencing court's responsibility is to address "the whole of [the] defendant's argument," not every variation on that theme. *United States v. Hardin*, 998 F.3d 582, 592 (4th Cir. 2021). And a court need not spell out its responses where context makes clear it found the defendant's arguments unpersuasive. *Lozano*, 962 F.3d at 782. Ultimately, a sentencing court must say enough to satisfy us that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision-making authority." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020) (quoting *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017)) (second alteration in original).

14

Odum argues the district court failed to address his argument that three conditions of supervised release improperly delegated judicial authority to the probation office. Those conditions require Odum to (1) live at a place approved by the probation officer, (2) notify, at the request of his probation officer, any person the probation officer determines to be at risk from Odum about that risk, and (3) participate in drug testing and, if warranted, in a substance abuse program.[5]

Odum presents his objections and the district court's responses *seriatim*, inviting us to evaluate the district court's response to each of these objections in isolation. But that is not our task. Rather, "we look at the full context, including the give-and-take of a sentencing hearing." *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020); *see also Boyd*, 5 F.4th at 559 (explaining that "we do not expect district courts to 'robotically tick through' individual explanations for every condition imposed") (quoting *Arbaugh*, 951 F.3d at 174). Reading the full transcript, it is clear the district court did not believe any of these conditions delegated too much authority to the Probation Office. Odum does not challenge the substance of these conditions on appeal, and we are satisfied that the district

---

[5] Odum claims that he also objected to the second of these conditions as "unduly vague." Br. of Appellant at 52. But Odum mentioned vagueness only in passing and as part of his argument for why that condition improperly delegated judicial power to the probation office. The district court is only required to address non-frivolous arguments a defendant actually "presents." *Boyd*, 5 F.4th at 557 (quoting *Lozano*, 962 F.3d at 782). Because Odum did not make a separate vagueness argument, the district court was not required to address it separately. *See United States v. Powers*, 40 F.4th 129, 137 (4th Cir. 2022).

15

court gave "specific attention" to Odum's objections before rejecting them. *Blue*, 877 F.3d at 521.[6]

V.

Odum has not shown that the error in the district court's aiding and abetting instruction affected his substantial rights, that the district court abused its discretion in seating Juror Eight, or that the court's conditions of supervised release were procedurally unreasonable. Accordingly, the judgment of the district court is

*AFFIRMED.*

---

[6] Odum's challenges to the district court's responses to three of his other objections also fail. The district court expressly rejected the premise of each of those objections during the sentencing hearing.